**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0441n.06

No. 08-6339

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 21, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ROBERT VAUGHN BRUCE, | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| CORRECTIONAL MEDICAL SERVICES, INC. | ) | |
| | ) | |
| *Defendant-Appellee.* | ) | |

Before: COOK and McKEAGUE, Circuit Judges; HOOD, District Judge.[*]

**HOOD, District Judge**. Robert Vaughn Bruce, a pro se Tennessee prisoner, appeals the district court's grant of summary judgment for Defendant Correctional Medical Services, Inc. ("CMS") in this civil rights action filed under 42 U.S.C. § 1983.

On appeal, Bruce contends that the district court erred in: (1) granting summary judgment without affording him discovery; (2) failing to liberally construe his pro se motions; (3) concluding that he failed to exhaust administrative remedies; and (4) concluding that the statute of limitations had expired on his claim. CMS responds that the district court's judgment was proper. For the reasons which follow, the judgment of the district court is **REVERSED**.

**I.      Factual and Procedural Background**

Bruce is an inmate in the custody of the Tennessee Department of Corrections and housed

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

at the Morgan County Correctional Complex in Wartburg, Tennessee.  CMS contracted to provide medical services for the Tennessee Department of Corrections.

In January 2006, Bruce filed a lawsuit against CMS alleging deliberate indifference for failure to act upon serious medical conditions in violation of the Eighth Amendment.  Bruce averred that CMS denied him medical treatment for injuries he suffered to his hip and knee while working at his prison job in 2002.

In September 2002, Bruce fell from a trash truck at the Lincoln County jail and seriously injured his right knee.  Dr. Clary Foote treated Bruce's knee and recommended Bruce receive immediate surgery to repair the knee.  Bruce did not receive surgery, but instead, was treated with pain medication and crutches.  Another physician performed orthoscopic surgery on Bruce's knee in July 2004.  This surgery failed to improve the condition of Bruce's knee.  Bruce continued to experience knee pain, which required pain medication, until knee replacement surgery was performed in July 2007.  Bruce alleges that CMS was deliberately indifferent to his medical need for surgery to repair his knee for almost five years, and, that this deliberate delay in performing the surgery ultimately caused him to have to have a full knee replacement and permanent impairment of his knee.

At the time of the violations alleged in the complaint, CMS provided all primary care and specialty medical services for the Tennessee Department of Correction inmates.  In its answer, CMS admitted that its employees did provide care to Bruce in relation to the events alleged in the complaint.  CMS, however, denied that any of its care or treatment was inappropriate, failed to comply with the acceptable standard of care, or constituted a violation of Bruce's constitutional rights.  CMS's answer also contained the affirmative defenses that the statute of limitations barred

Bruce's claims and that Bruce failed to exhaust his administrative remedies.

In September 2007, CMS filed a motion for summary judgment, or in the alternative, motion to dismiss. In the portion of the motion that focused on dismissal, CMS argued that Bruce failed to file his case within the applicable statute of limitations and failed to exhaust his administrative remedies. In that same motion, CMS argued for judgment as a matter of law on Bruce's medical malpractice claim. Bruce did not respond in opposition to the motion. Instead, Bruce filed a motion for an enlargement of time to respond to the motion for summary judgment, and in support, stated that he had never received a copy of CMS's motion for summary judgment. The district court granted Bruce's motion and directed the clerk to send Bruce copies of the motion for summary judgment and supporting documents. On May 19, 2008, Bruce filed a second motion for enlargement of time in which to respond to the motion for summary judgment. The district court again granted the motion, allowing Bruce until June 9, 2008, to file a response to the motion. Following that order, Bruce filed a motion to compel, requesting release of his medical records, along with third motion for enlargement of time in which to respond to the motion for summary judgment. CMS responded in opposition to those motions. Bruce filed a reply to CMS's response to his motion to compel, but ultimately never responded to the motion for summary judgment. On September 29, 2008, the district court entered an Order and Memorandum denying Bruce's motion to compel and motion for extension of time, and granting CMS's motion for summary judgment based on the expiration of the statute of limitations and Bruce's failure to exhaust his administrative remedies. This timely appeal followed.

II.     **Standard of Review**

This Court reviews de novo a district court's grant of summary judgment. *Brooks v. Am.*

3

*Broad. Cos.*, 932 F.2d 495, 500 (6th Cir. 1991). Generally, summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988). Only factual disputes that might affect the outcome of a lawsuit under substantive law are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be "genuine," a dispute must involve evidence upon which a jury could find for the nonmoving party. *Id.* The burden is upon the moving party to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Thereafter, the nonmoving party must present significant probative evidence in support of the complaint to defeat the motion. *Anderson*, 477 U.S. at 249-50. The nonmoving party is required to show more than a metaphysical doubt as to the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.    Analysis

### A.    Motion for Summary Judgment

CMS filed a motion for summary judgment, or in the alternative, motion to dismiss, on September 14, 2007. CMS sought a judgment as a matter of law on Bruce's medical malpractice claims. CMS also sought dismissal of the action for Bruce's failure to exhaust his administrative remedies and failure to file his complaint within the applicable statute of limitations. The district court, however, treated the motion as a one for summary judgment on the exhaustion and statute of limitations issues, and did not address the medical malpractice claim.

Federal Rule of Civil Procedure 12(d) states that "on a motion under Rule 12(b)(6) or 12(c),

4

matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

This court reviews the district court's decision to convert a 12(b)(6) motion to dismiss into a motion for summary judgment for abuse of discretion. *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 203 (6th Cir. 1998). A decision will be reversed for abuse of discretion only if this court has "a definite and firm conviction that the trial court committed a clear error of judgment." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)). Where "one party is likely to be surprised by the proceedings, notice is required" but generally "[w]hether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case." *Salehpour*, 159 F.3d at 204.

CMS's motion to dismiss for failure to exhaust and failure to comply with the statute of limitations was based on Fed. R. Civ. P. 12(b)(6) and the district court converted it to a motion for summary judgment under Rule 56. Thus, Rule 12(d) applies and, under the circumstances of this case, Bruce, a pro se petitioner, was likely to be surprised by the district court's decision and should have been given notice that the court was going to treat the motion, with regards to the exhaustion and statute of limitations issues, as one for summary judgment, and afforded an opportunity to present materials outside the pleadings on those issues. Failure to do so was error and, thus, the case must be remanded to the district court. Upon remand, Bruce must be given an opportunity to respond to the motion for summary judgment on the issues of exhaustion and the statute of limitations with materials not included in the pleadings.

B.    Statute of Limitations

The statute of limitations in Tennessee for a civil rights action for damages is one year after the cause of action accrued. T.C.A. § 28-3-104. The statute begins to run when the plaintiff knows or has reason to know of the injury upon which his action is based. "The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted). Initially, we find that the continuing violation theory, which allows the court to, "consider as timely all relevant violations 'including those that would otherwise be time [-]barred,'" does not apply in this case. *National Parks Conservation Ass'n. Inc. v. Tennessee Valley Authority*, 480 F.3d 410, 419 (6th Cir. 2007) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)).

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court explained, in the Title VII context, that:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180-or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

*Id.* at 113. This court has extended the reasoning in *Morgan* to the § 1983 context. *Sharpe*, 319 F.3d at 268-70 ("Accordingly, *Morgan* overturns prior Sixth Circuit law addressing serial violations, *i.e.*, plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those

6

occurring within the limitations period.").[1]  Furthermore, this court has stated that "[p]assive inaction does not support a continuing violation theory." *Eidson*, 510 F.3d at 635 (internal citations omitted). Accordingly, a continuing violation "is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (citation omitted).

In this case, there was evidence in the record showing that the needed surgery was not performed until 2007, and that Bruce was denied necessary surgery through this time.[2]  Actual actions by CMS of refusing medical care represent discrete unlawful acts (beyond passive inaction) that trigger the statute of limitations.  However, because of the one year statute of limitations, only

---

[1] The Sixth Circuit traditionally permitted two ways of showing a continuing violation.  First, plaintiffs could show a continuing violation, "by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Sharpe*, 319 F.3d at 268.  As discussed above, *Sharpe* eliminated this avenue. *Id.*  Second, plaintiffs could show a longstanding and demonstrable policy of discrimination. *Sharpe*, 319 F.3d at 268 ("To establish this category of continuing violation, 'appellant must demonstrate something more than the existence of discriminatory treatment in his case.'").  Bruce has not presented any evidence that would support the second category of the continuing violation theory.

[2] Bruce stated in his reply to CMS's motion for summary judgment or, in the alternative, motion to dismiss that, "a large part of the 2½ year delay [since the case was filed] was a direct result of [Bruce] receiving total knee replacement surgery because of the defendant's refusal to do the surgery in 2003 through 2007 when [CMS] lost the contract." (R. 52 Reply at 2.)  Bruce also attached a letter to his reply sent on April 19, 2007, in which he requested medical records from Dr. Foote. (R. 52-1 Reply at 2.)  In it he noted that CMS:

> [F]inally gave permission to surgery in July 2004, 1 year later, and yes, during a lot of suffering that was not necessary.  Dr. Higgs has taken over my care and has run into the same opposition as well.  He has had me on pain medication for the past 2 years, and he has said I have no right knee left.

(R. 52-1 Letter 2.)  On July 17, 2007, Bruce filed a motion asking the district court to hold this suit in abeyance, "until he is released and recovered from surgery" resulting "from an injury sustained in 2002."  (R. 34 Abeyance at 1-2.)  He explained that, "this delay is the direct result from defendant's deliberate indifference and gross negligence to [Bruce's] serious medical needs." (*Id.*)  The letter to Dr. Foote is dated April 19, 2007.

unlawful acts that occurred on or after January 25, 2005 are not time-barred. Therefore, on remand, the district court should both give Bruce notice and, if necessary, determine which discrete unlawful actions by CMS alleged by Bruce, if any, took place on or after January 25, 2005.

C.      Exhaustion of Administrative Remedies

Bruce argues that he was not required to exhaust his administrative remedies because CMS is a private entity, not a state agency, and the Tennessee Department of Corrections grievance procedures did not provide for a means to file a grievance against a private entity state contractor. The district court cited to *Jones v. Bock*, which held that prisoners are not required "to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). The district court also noted that "[t]here is nothing in the record . . . to indicate that [Bruce] filed a grievance with the prison authorities as to the alleged denial of medical care." (R. 53 Opinion at 7.) However, the journal attached to Bruce's complaint, which provides a partial history of the medical treatment concerning Bruce's knee states that, on July 11, 2003, Bruce attempted to file a grievance and "was told Policy 501.01 would not allow it."[1] (Complaint Exhibit 1 at 16-17.) Furthermore, as the district court noted that, under *Bock*, "failure to exhaust administrative remedies is an affirmative defense to be established by defendants." (R. 53 Opinion at 7); *see also Bock*, 549 U.S. at 204 ("The first question presented centers on a conflict over whether exhaustion under the PLRA is a pleading requirement the prisoner must satisfy in his complaint or an affirmative defense the defendant must plead and prove."); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. May 1,

---

[1]Policy 501.01 is the Tennessee Department of Correction Grievance Procedures. TENN. INMATE GRIEVANCE PROCEDURES 501.01. The Grievance Procedures also state that, "[i]nmates shall not be permitted to submit more than one grievance arising out of the same or similar incident." TENN. INMATE GRIEVANCE PROCEDURES 501.01(I)(3).

8

2009) (citing *Bock* as saying that "a prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof"); *Kramer v. Wilkinson*, 226 Fed. App'x 461, 462 (6th Cir. March 21, 2007) (noting that, after *Bock* the plaintiff does "not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants") (per curiam). Therefore, on remand, the district court should both give Bruce notice and, if necessary, determine if CMS has met its burden to show Bruce's failure to exhaust his administrative remedies.

## IV.    Conclusion

For the foregoing reasons, the judgment of the district court is **REVERSED** and **REMANDED** to permit Bruce to respond to the motion for summary judgment and the district judge to decide, upon filing of Bruce's response, whether Bruce was required to exhaust his administrative remedies and which actions by CMS are not barred by the statute of limitations.